Carmen CANALES, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. CIV.A. 03–0989.

United States District Court, E.D. Pennsylvania.

March 17, 2004.

Faye Riva Cohen, Esquire, Philadelphia, PA, for Plaintiffs.

Nicholas R. Cerulli, Esquire, Social Security Administration, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

On April 20, 1995, plaintiff Carmen Canales filed an application for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, based on claimed disabilities from chronic Epstein–Bar Virus Syndrome (EBS), Chronic Fatigue Syndrome (CFS), and other conditions. Plaintiff's application was denied and the Commissioner of Social Security declined her request for reconsideration. On December 10, 1996, Administrative Law Judge (ALJ) Paula Garrety held a hearing to review plaintiff's application. ALJ Garrety's subsequent decision found that plaintiff had a severe impairment resulting from a combination of mild positional nystagmus with vertigo, mild deafness in the right ear, degenerative joint disease of the feet, bulging L5–S1 disc, and fatigue.[1] See Record at 15. Based on hearing testimony and medical evidence, however, the ALJ found that plaintiff's severe impairment was not an Appendix 1 disability.[2] See id. In coming to this decision, ALJ Garrety did not accord great weight to the opinion of plaintiff's physician, Dr. Eugene H. Siegel, because he diagnosed plaintiff with fibromyalgia, CFS, and EBS without supporting clinical or diagnostic findings and noted only one objective symptom—swollen glands. See id. at 17. ALJ Garrety also decided that she could not take Ms. Canales' own testimony about her subjective symptoms "at face value" because of conflicts and inconsistencies in the record. See id. at 18. Citing the opinion of a vocational expert, ALJ Garrety concluded that Ms. Canales had the residual capacity to return to her prior jobs. See id. at 19. It is significant to note that the ALJ stated that had she found Ms. Canales' testimony credible, she might well have been found Canales disabled. In the opinion of the vocational expert, had Ms. Canales' testimony about her subjective complaints was taken as the truth, her occupational base would be eroded and it would have been difficult for her to compete for employment. See id. at 18, 65–66.

Plaintiff requested review of ALJ Garrety's decision, which the Appeals Council denied on April 6, 1998. Plaintiff then filed suit in the U.S. District Court for the Eastern District of Pennsylvania pursuant to 42 U.S.C. § 405(g). Upon consideration of cross-motions for summary judgment, Magistrate Judge Arnold C. Rapoport recommended that the court deny both motions and remand to the Commissioner for further proceedings because ALJ Garrety erred in analyzing the veracity of plaintiff's complaints of pain. See Doc. No. 11, 98–

---

1. ALJ Garrety also found that while plaintiff suffered from mild Carpal–Tunnel Syndrome on the left side of her body, this impairment was not "severe" as defined by Social Security regulations. See Record at 15.

2. This Appendix provides a list of impairments that qualify as presumptive disabilities. See 20 C.F.R. § 404, subpart. P (1999). If the ALJ determines that a claimant does not suffer from one of the listed impairments, he or she must decide whether the claimant has the residual function capacity to perform her past work. If the claimant does not have such capacity, the ALJ must "determine whether there is other work in the national economy that the claimant can perform." Sykes v. Apfel, 228 F.3d 259, 262–63 (3d Cir.2000) (explaining the framework of evaluating Social Security applications).

CV–2395 (reproduced at Record 335 *et seq.*). As support for his holding, Magistrate Judge Rapoport cited, *inter alia, Smith v. Califano,* 637 F.2d 968 (3d Cir. 1981), where the Third Circuit held that a claimant's subjective complaints must be seriously considered, even if objective medical evidence cannot prove their existence and *Chrupcala v. Heckler,* 829 F.2d 1269 (3d Cir.1987), where the court held that pain itself may be a disabling impairment. Considering Ms. Canales' testimony was particularly important because the conditions of which she principally complained—EBS, CFS, and fibromyalgia—are largely characterized by symptoms that may not manifest themselves in objective medical evidence. *See* Record at 349. Plaintiff's testimony as to the extent of her pain and fatigue was supported by the treatment notes of several doctors and Magistrate Judge Rapoport did not find persuasive the reasons cited by the ALJ for discounting Ms. Canales' credibility. *See id.* at 350–51.

On February 11, 1999, Judge Robert F. Kelly approved Magistrate Judge Rapoport's report, which instructed the ALJ, on remand, to "carefully consider the plaintiff's subjective complaints of pain, the duration of the alleged afflictions, combined with the supporting evidence in the record" in determining whether Ms. Canales is actually disabled. *See* Record at 323. After a supplemental hearing on December 6, 1999, ALJ Garrety denied Ms. Canales' claim for benefits again, finding that "the claimant's allegations concerning her impairments and their impact upon her ability to work are not wholly credible." *See id.* at 421. As support for this finding, the ALJ noted that plaintiff alleged symptoms of fever and insomnia that are not associated with EBS or CFS. *See id.* The

ALJ also found inconsistencies in Ms. Canales' testimony, such as her testimony that she attempted to work at home and was enrolled in an exercise program during the time period during which she claimed to suffer from CFS. *See id.*

On May 4, 2001, the Appeals Council vacated ALJ Garrety's decision because she did not discuss the credibility of third-party witnesses as required by 20 C.F.R. §§ 404.1529(c)(3), 416.919(c)(3) and SSR 96–7p. The Council reassigned the case to another ALJ with instructions to hold a third hearing and conduct "a complete credibility assessment with an evaluation of any third party testimony." *See id.* at 437. The case was assigned to ALJ Gerald J. Spitz, who heard testimony from Ms. Canales, one of her pastors at church, and a vocational expert at a hearing held December 4, 2001.[3] On February 4, 2002, ALJ Spitz issued a decision denying benefits, finding that plaintiff could perform her past relevant work despite severe impairments of CFS, EBS, fibromyalgia, back pathology, and degenerative joint disease of the foot. *See id.* at 286–87. As support for his decision, ALJ Spitz reviewed Ms. Canales' testimony, evidence of the extent of her daily activities, and her medical treatment records. Referring to ALJ Garrety's adverse credibility determination, ALJ Spitz stated that Ms. Canales' "allegations of disabling pain have been treated accordingly." *Id.* at 287.

Plaintiff filed for federal court review of ALJ Spitz's decision on February 21, 2003 and the case was assigned to this Judge. The Commissioner filed a Motion for Voluntary Remand on April 8, 2003 because she was "unable to locate the file containing the Administrative Law Judges' decision ... and the tape recording of the hearing ...." *See* Motion (Doc. 6) at 2.

**3.** Before her third hearing before the ALJ, plaintiff voluntarily withdrew her claim for a continuing disability and requested benefits

for this closed period of disability, August 26, 1994 to January 31, 2000. *See* Record at 286, 491.

The court granted the Motion and closed the case. After finding the relevant records, the Commissioner filed an Answer to plaintiff's complaint on October 3, 2003. The court issued a procedural order and reopened the case on December 2, 2003. Now before the court are cross-motions for summary judgment. According to 42 U.S.C. § 405, the court shall treat the factual findings of the Commissioner as conclusive if they are "supported by substantial evidence." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995) (citation omitted). While the review of factual findings is deferential to the Commissioner, the standard of review for all legal issues of the case is plenary. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999).

*Facts*

Carmen Canales was born on February 20, 1956. She is married and has three grown children. She has an eighth-grade education and has worked as a medical assistant and receptionist in several medical offices and as a hospital admissions clerk. In the late 1980s, Ms. Canales began experiencing symptoms of dizziness, partial deafness, tinnitus, and leg and back pain. In 1989, she tested positive for the Epstein–Barr virus and her physician, Dr. Eugene Siegel, diagnosed her with CFS. *See* Record at 15, 167. In 1990, plaintiff was referred to neurologist Richard I. Katz, M.D., who diagnosed her with mild positional horizontal-rotary nystagmus and prescribed an increased dose of the prescription drug Antivert for her vertigo symptoms. *See id.* at 16, 123–25. Blood

tests in 1992 and 1993 showed continued presence of antibodies which proved prior exposure to Epstein–Barr, but no active virus. *See id.* at 197. After increasingly frequent symptoms such as exhaustion, nausea, joint pain, and lightheadedness, plaintiff stopped working as a receptionist and medical assistant in October 1994. *See* Record at 46, 511–12.

Ms. Canales received frequent medical care for the next several years. X-rays revealed degenerative disc disease in the lumbar spine, for which she received injections, and degenerative joint disease of both feet. *See* Record at 286,179, 194. Plaintiff sought treatment for pain in her lower back, abdomen, and hips, leading Dr. Siegel to diagnose her with fibromyalgia in June 1996. In November 1996, Dr. Siegel wrote a report confirming that he had diagnosed plaintiff with CFS in 1989 and that symptoms of this syndrome, including headache, insomnia, swollen glands, sore throat, joint pain, depression, and severe fatigue had gotten worse since that initial diagnosis. In his opinion, plaintiff was unable to work any longer and, specifically, she could not perform an eight-hour day five days a week. *See id.* at 167.

*Legal Findings*

In her Motion for Summary Judgment, plaintiff argues that ALJ Spitz's decision should be rejected by this court because the ALJ did not adhere to the Report and Recommendation of Magistrate Judge Rapoport, which applied to case on remand to ALJ Garrety and upon reassignment by the Appeals Council. Specifically, plaintiff asserts that ALJ Spitz did not adequately analyze subjective complaints of pain by addressing the seven factors set forth by Social Security regulations.[4] Plaintiff also

---

**4.** According to Social Security Ruling 96–7p and 20 C.F.R. §§ 404.1529, 416.929, those seven factors are (i) the extent of daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limi-

argues that the ALJ did not consider third-party testimony and did not properly question the vocational expert. The Commissioner counters that ALJ Spitz's decision was supported by substantial evidence and should therefore be affirmed by this court. The Commissioner points to evidence in the record that doctors had rejected the diagnosis of Carpal–Tunnel Syndrome and that plaintiff had voluntarily discontinued her treatment for depression. *See* Motion at 21. As plaintiff points out, however, those two conditions were not plaintiff's major ailments and were not part of the severe combined impairment for which she is now seeking benefits. While at least one doctor found that plaintiff's degenerative joint disease could be treated with over-the-counter pain medication, *see* Commissioner's Motion at 22, the evidence overall suggests that this degenerative condition, combined with lasting effects of EBS, CFS, and fibromyalgia could have caused plaintiff to have the disabling pain that she claims prevented her from working between 1994 and 2000.

Of the seven factors that should be considered when evaluating a claimant's subjective allegations, ALJ Spitz only seriously considered the extent of plaintiff's daily activities. ALJ Spitz found that plaintiff was able to cook, clean, shop, and do laundry, which supported his conclusion that plaintiff's subjective allegations of pain and fatigue were not credible. *See* Record at 288, 18. Plaintiff testified, however, that during the relevant period she was unable to work due to general exhaustion and dizziness, which made her pass out at work on several occasions just before she left her job in October 1994. *See id.* at 511–12. After she left her job, she described her daily routine as staying in bed most of the day. *See id.* at 517. At the 1999 hearing before ALJ Garrety, Ms. Canales described her typical day as resting lying

down because pain prevented her from sitting up for long periods of time and stated that her husband, daughter, or mother would prepare meals and do household chores like washing dishes. *See id.* at 457–61. ALJ Spitz also determined that plaintiff could perform sedentary work, based on his interpretation of Dr. Siegel's November 22, 1996 report detailing plaintiff's physical limitations. *See id.* at 167–72. This medical report states, however, that plaintiff cannot complete a standard eight-hour workday, must alternate standing and sitting every two hours, has limited capacity to push or pull, and cannot lift more than ten pounds. *See id.* If the ALJ had adequately considered factors other than the extent of plaintiff's daily activities—particularly the medical treatment that Ms. Canales received between 1989 and 2000, he may have come to a different conclusion about Ms. Canales' credibility, including the extent of her pain and fatigue, crucial elements in deciding the question of disability in this case.

The Appeals Council had directed ALJ Spitz to conduct a credibility analysis of third party witnesses. There were two third-party witnesses at the third hearing: vocational expert Sherry Thretsky and Reverend Tracy Bernard, plaintiff's pastor. The ALJ limited his questions of Ms. Thretsky to a classification of the kinds of work that Ms. Canales had previously performed, which were semi-skilled and either sedentary or light exertion. *See* Record at 519–20. As plaintiff notes in her Motion for Summary Judgment, ALJ Spitz did not pose hypothetical questions to Thretsky based on plaintiff's circumstances to determine whether this was a viable employment option for her, which the courts have found to be helpful. *See Burns v. Barnhart,* 312 F.3d 113 (3d Cir.2002). Plaintiff also notes in her Motion that ALJ Spitz

tations and restrictions due to pain or other symptoms.

failed to analyze the combined effect of all of plaintiff's claimed disabling conditions. *See* Motion at 5–6.

█ Based on the record of this protracted case, the court finds that the ALJ's decision to deny plaintiff benefits was not supported by substantial evidence in that the ALJ did not adequately discuss all seven factors required to evaluate subjective complaints of pain. While the ALJ does mention the testimony of the third party witnesses at the third hearing, he does not analyze those witnesses' credibility and did not pose hypothetical questions to the vocational expert to explore more fully the crucial question of whether the plaintiff could have performed her relevant work during the claimed period of disability.

The court declines to delay Plaintiff's award of benefits by remanding the case to the Commissioner for a rehearing. *See* 42 U.S.C. § 405(g). Neither party nor the courts, benefitted from protracted litigation and bureaucratic delays that have prevented a reasonably swift resolution of this case. Plaintiff's claims to a closed period of disability are meritorious and she has waited nearly nine years to receive disability benefits.

An appropriate Order follows.

### ORDER

**AND NOW,** this 17th day of March, 2004 upon consideration of the parties' cross Motions for Summary Judgment, it is hereby **ORDERED** that Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED.** The case is **REMANDED** to the Commissioner for a calculation of award and benefits.